UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>              v.<br><br>NIKET JAIN,<br><br>              Defendant. | 19 Cr. 59 (PKC) |

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND TO SUPPRESS
<u>HIS POST-ARREST STATEMENT</u>**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-1041/6519

Tara M. La Morte
Samuel L. Raymond
Assistant United States Attorneys
– Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................2
FACTUAL BACKGROUND......................................................................................................2
MATERIALS FROM INDIVIDUAL-1'S DEVICES.............................................................5
ARGUMENT...............................................................................................................................7
    I.   The Government's Mistake Was Inadvertent ........................................................7
    II.  The Defendant Has Not Been Deprived of His Right to Counsel ..........................8
      A. Applicable Law................................................................................................ 8
      B.  Discussion ........................................................................................................ 9
    III. There is No Basis to Dismiss the Indictment on Speedy Trial Grounds ...............10
      A.  Applicable Law............................................................................................... 10
      B.  Discussion ...................................................................................................... 11
    IV. The Government Will Not Introduce Jain's Post-Arrest Statements in its Case-in-
         Chief............................................................................................................................14
CONCLUSION..........................................................................................................................14

The Government respectfully submits this memorandum of law in opposition to defendant Niket Jain's motion to dismiss the indictment (Dkt. No. 73, herein the "Motion" or "Mot.") and to suppress a post-arrest statement Jain made.

## PRELIMINARY STATEMENT

As the Court is well aware, the Government inadvertently failed to produce certain discovery materials in its possession until February 2020. Contrary to the defendant's argument—which is unsupported by any relevant authority--this oversight provides no basis to dismiss the indictment. The Government expeditiously produced the materials promptly upon discovering its error, and the defendant has not pointed to any prejudice resulting from the timing of the production itself. The defendant has not been deprived of the counsel of his choice. And the Court's repeated granting of continuances, including at times at *defendant's* request to review the *other* discovery material in this case, could not violate the Speedy Trial Act or the Speedy Trial Clause, or provide a basis to dismiss the indictment. With respect to the post-arrest statement, the Government does not plan to rely on the statement in its case-in-chief, thereby mooting his motion to suppress.

## FACTUAL BACKGROUND

Individual-1, who conspired with the defendant to commit the crimes charged in Counts One, Two and Three of the Indictment, was arrested in 2018. Upon his arrest, Individual-1 consented to the Government's seizure and review of three electronic devices.[1] The FBI case agent then-assigned to the matter took custody of electronic images of the devices (described herein as "Individual-1's Devices"). The United States Attorney's Office was informed both that

---

[1] As the Government represented at the February 26, 2020 Conference, (Dkt. No. 73 Ex. 1 p. 4–5), and recent letter motion, (Dkt. No. 74), materials on the electronic devices contained a subset of attorney-client privileged communications, and Individual-1 did not waive this privilege. The Government plans soon to reply to the defendant's response, filed yesterday. (Dkt. No. 78).

Individual-1 had consented to the seizure and that the FBI had custody of the images of Individual-1's Devices.

A few months later, on January 28, 2019, a grand jury sitting in this district returned an Indictment charging the defendant with: conspiracy to commit securities and wire fraud; securities fraud; wire fraud; and obstruction of justice.  The defendant was arrested the following day, Mirandized, and made post-arrest statements.[2]  The Government wrote to the Court on January 30 requesting that the Court set a date for arraignment and initial conference, and that the Court exclude time to the date of the initial conference.  (Dkt. No. 6).  The Court ordered a conference for February 14, 2019, and excluded time to that date.  (Dkt. No. 7).

At the February 14, 2019, conference, the Government set out the discovery materials it planned to produce (which, through an oversight, did not include materials from Individual-1's Devices); the Court scheduled the next conference for April 17, 2019, and the Government (with no objection from defense counsel) applied for the Court to exclude time to April 17, so that the Government could begin to produce, and defendant could begin to review, the relevant discovery as outlined by the Government at the conference.  (Dkt. No. 73 Ex. 2).

As the Government began producing discovery, on April 11, 2019, the defendant's then-counsel wrote the Court requesting a continuance and an exclusion of speedy trial time, so that he could review the materials already disclosed.  (Dkt. No. 12).  The Court re-scheduled the conference to May 31, 2019, and excluded speedy trial time until that date.  (Dkt. No. 13).  On May 24, 2019, the defendant's then-counsel again requested a continuance to review recently produced discovery and exclusion of speedy trial time; the Court re-scheduled the conference to

---

[2]  The defendant filed the unredacted FBI report with his post-arrest statements to the Court under seal on March 19.

3

August 1, and agreed to exclude time.  (Dkt. Nos. 15 and 16).

On August 1, 2019, the Court held a conference.  During that conference, defendant's then-counsel described various technical problems he had been having opening the materials already disclosed.  (Dkt. No. 19, p. 3).  As a result, he "request[ed] additional time to finish discovery" and another adjournment.  (Dkt. No. 19, p. 10).  The Court scheduled another conference on October 11, 2019.  (Dkt. No. 19, pp. 10–11).  The Government moved to exclude time to the new conference date, with no objection from defense counsel, and the Court so ordered.  (Dkt. No. 19, pp. 12–13).

On October 11, 2019, the Court held the next conference.  The Court set trial and motions dates, and excluded time to the trial date in the interests of justice, including for the parties to prepare for trial, set for March 30, 2020.  (Dkt. No. 29).

On October 25, 2019, the defendant moved for a bill of particulars and to suppress emails seized and searched pursuant to a search warrant.  (Dkt. No. 28).[3]  Pursuant to 18 U.S.C. § 3161(h)(1)(D), time between October 25, 2019, and November 24, 2019, was automatically excluded.  On November 25, 2019—at which time trial had already been set—Benjamin Allee, Esq., filed a notice of appearance and requested a "brief adjournment of the scheduled trial date." (Dkt. No. 34).  The Court denied Mr. Allee's request.  (Dkt. No. 35).  Mr. Allee wrote again to the Court, requesting a conference and that the Court reconsider granting the defendant an adjournment.  (Dkt. No. 39).  The Court scheduled a conference for December 19, 2019.

The Court denied the defendant's motion for a bill of particulars and to suppress the email

---

[3]  This motion was later stricken from the docket because it attached a sealed complaint and affidavit.  (Dkt. No. 36).  The motion was later refiled under seal, though the docket does not show that the motion was refiled, but as noted above, the Court ruled on the motion on December 18, 2019.

return on December 18, 2019. (Dkt. No. 46). At the conference the next day, the Court refused to move the trial date. (Dkt. No. 58).

Current counsel entered a notice of appearance on January 2, 2020. On January 17, 2020, the defendant moved to dismiss Counts One, Two and Three of the Indictment. (Dkt. No. 55). That motion is still pending. Accordingly, pursuant to 18 U.S.C. § 3161(h)(1)(D), time was automatically excluded from January 17 to February 16. And since the instant motion, filed on March 13, time is automatically excluded until April 12.

In reviewing the productions of discovery materials in or about February 2020, the Government recognized that the FBI still had custody of the images of Individual-1's Devices. On February 12, 2020, the Government informed defense counsel about these materials, and the next day, informed the Court. After the Court held two conferences on the matter, on February 26 and March 3, 2020, the Court set out a briefing schedule on the defendant's proposed motion to dismiss the indictment. At the March 3, 2020 conference, the Court adjourned the trial date, from March 30 to June 1. On March 13, 2020, the defendant filed the Motion, to dismiss the indictment and suppress the defendant's post-arrest statement. (Dkt. No. 73).

## MATERIALS FROM INDIVIDUAL-1'S DEVICES

Before addressing the law, and why the defendant has offered no basis to dismiss the Indictment, the Government notes the nature of the materials on Individual-1's Devices. The Government is continuing but has not completed its review of these materials. Given the timing of the Government's realization it had these materials in its possession, the Government disclosed them immediately to defense counsel. However, as the Government is continuing its review, it notes that the Devices may contain materials falling into different categories with respect to discoverability and the timing of disclosure:

5

- First, any exculpatory information, which should be disclosed to the defendant at the earliest occasion. In its review of the materials on Individual-1's Devices, the Government has not yet found any information that the Government believes is subject to disclosure under *Brady*.

- Second, any information subject to disclosure under Rule 16, which should have been disclosed to the defendant pursuant to the schedule set by the Court after arraignment, in 2019. This information includes, for instance, messages from the defendant to Individual-1, Rule 16(a)(1)(B); and any other information on Individual-1's Devices "material to preparing the defense" or that the Government "intends to use . . . in its case-in-chief," Rule 16(a)(1)(E)(i) and (ii). In its review of the materials on Individual-1's Devices, the Government has found information subject to disclosure under Rule 16.

- Third, any information that would serve to impeach Individual-1's anticipated testimony, which is subject to disclosure under *Giglio v. United States*, and should have been disclosed to the defendant per the Court's scheduling order.[4]

- Fourth, any information that "relates to the subject matter" of Individual-1's anticipated testimony, which is subject to disclosure under 18 U.S.C. § 3500(b), and should have been disclosed to the defendant per the Court's scheduling order, March 23, 2020, one week before the scheduled trial date. In its review of the materials on Individual-1's Devices, the Government has found material subject to disclosure under the Jencks Act.

---

[4] It does not appear as if the Court specifically ordered a schedule for *Giglio* disclosures under the prior scheduling order, but the Government anticipated making such disclosures in February 2020.

6

- Fifth, Individual-1's devices contain information protected by the attorney-client privilege, as set forth in the Government's letter dated March 17, 2020 (Dkt. No. 75). Specifically, Individual-1, working with his counsel, had designated certain material on Individual-1's computers as privileged, and the Government does not have authorization to access those materials. The Government is using a taint team to screen out potentially privileged information from Individual-1's cellular telephone.

- Finally, all other information on Individual-1's Devices: matters unrelated to the subject matter of Individual-1's anticipated testimony, impeaching of Individual-1, material to the defense or for use by the Government at trial, or exculpatory information. In this case, for example, such information includes video games played by Individual-1. This information is not subject to disclosure to the defendant at all although, as noted above, it has been disclosed.

## ARGUMENT

**I.     The Government's Mistake Was Inadvertent**

As described further herein and as he himself recognizes, none of the defendant's arguments have even facial plausibility unless he establishes that the timing of the Government's disclosure was intentional. (*See* Mot. at 2–3 ("the facts as they are known to the Defendant indicate the Government's intentionality")). This he cannot do. The defendant's theories for *why* the Government may have intentionally delayed production, but then immediately turned around, alerted the Court, and then produced the discovery as swiftly as possible,[5] including producing materials which, as described above, were likely not discoverable, or were

---

[5] Indeed, so swiftly that as the Court knows the Government accidentally included materials deemed privileged. Dkt. No. 75.

discoverable only at a later date, are illogical, self-contradictory, and entirely speculative. The defendant asserts its theory for why the Government may have acted intentionally:

> because, for example, the Government believed that it had enough evidence already, or that it had committed to a privilege review of the devices on behalf of Krigsfeld that had not been completed or reviewed, or that the Government became concerned that because the data had not been produced for so long, producing it now could be problematic, so it delayed, or some other reason.

Mot. at 4. None of those reasons make any sense. There is no basis in the record to suggest that the Government acted intentionally. Indeed, the Government's actions suggest the exact opposite—the Government recognized its own error and acted swiftly to fix it.

## II.     The Defendant Has Not Been Deprived of His Right to Counsel

### A.     Applicable Law

The Sixth Amendment guarantees a right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). As part of that right, the Sixth Amendment also generally guarantees a right to counsel of the defendant's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006). But this right is not absolute: "in certain circumstances" a trial court may "require a defendant to proceed to trial with counsel not of defendant's choosing." *United States v. Griffiths*, 750 F.3d 237, 241 (2d Cir. 2014) (citing *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997)).

Courts have a "great deal of latitude in scheduling trials," and need not grant a continuance so that a defendant may be represented by counsel of his choosing, where such a continuance would cause significant delay. *Griffiths*, 750 F.3d at 241 (citing *United States v. Brumer*, 528 F.3d 157, 161 (2d Cir. 2008)); *see also Gonzalez–Lopez*, 548 U.S. at 152 (recognizing lower courts' ability to balance the right to counsel of choice with "the needs of fairness" and "demands of its calendar"). Additionally, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id.* at 151–52.

8

**B.     Discussion**

The defendant has not been "deprived" of his counsel of choice, Benjamin Allee. Mr. Allee was not available to try this case on March 30, 2020. The Court had "great latitude" to schedule the trial for that date, even if that meant Mr. Allee was not available. *Griffiths*, 750 F.3d at 241. In any event, any conceivable prejudice has been cured: the trial is not scheduled for March 30, 2020 anymore, but is scheduled for June 1. As the Court made clear to the defendant repeatedly at the conferences held on February 26 and March 3, 2020, given the need for an adjournment, if Mr. Allee was available on June 1, the defendant would be perfectly capable of hiring him to try this case on that date. The Court even assigned conflict counsel to advise the defendant on his options, including a potential choice to re-hire Mr. Allee. Instead, the defendant chose to maintain his current counsel: a free and voluntary choice. There is thus no Sixth Amendment violation.

The only case that the defendant cites in support of his motion, *United States v. Stein*, 541 F.3d 130 (2d Cir. 2008), is inapposite. The Second Circuit held in *Stein* that the Sixth Amendment protects "an individual's right to choose the lawyer or lawyers he or she desires and to use one's own funds to mount the defense that one wishes to present." *Id.* at 151 (citations omitted). The defendant has the right to choose Mr. Allee, and to use his funds to do so. He now complains that he has "limited funds" which means it is "not an option at this time to rehire Mr. Allee." (Mot. at 19). But: 1) the Sixth Amendment does not guarantee a right to a specific attorney, at any time, at any cost; 2) his "limited funds" still mean that the defendant is in no worse a position (and in fact, in a far better one, since he was able to choose his current counsel) than indigent defendants who have no right to counsel of choice at all; and 3) he never alleges that the Government knew of his financial status when failing to previously review and produce the relevant discovery.[6] Unlike in

---

[6] And it is unclear how his current financial status affects his ability to defend himself in this case: had the Government made a timely disclosure of the appropriate material from Individual-

*Stein*, the Government has not "controlled" or "vetoed" or "interfered" with the defendant's choice of counsel. 541 F.3d at 154. The Government's inadvertent failure to review and produce the relevant discovery materials at the appropriate time has nothing to do with the defendant's current choice of able counsel.

### III. There is No Basis to Dismiss the Indictment on Speedy Trial Grounds

#### A. Applicable Law

"[T]he Speedy Trial Act generally requires a trial to begin within 70 days of the filing of an information or indictment or the defendant's initial appearance, 18 U.S.C. § 3161(c)(1), but the Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006). These exceptions provide courts with "necessary flexibility," to accommodate complex criminal cases, and other fact-specific circumstances. *Id.* In particular, Section 3161(h)(8) governs "ends-of-justice continuances," which "permit[] a district court to grant a continuance and to exclude the resulting delay if the court, after considering certain factors, makes on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial." *Id.* at 498-99.

The right to a speedy trial is also guaranteed by the Sixth Amendment. Courts must balance the following four factors when analyzing whether a defendant's constitutional right to a speedy trial has been violated: 1) the length of the delay, 2) the reason for the delay, 3) the defendant's assertion of his or her right, and 4) the prejudice to the defendant. *United States v. Bert*, 814 F. 3d 70, 87 (2d Cir. 2016) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United*

---

1's Devices, his counsel would still have had to review the material; and if this case proceeds to trial, the defendant would still have had to fund trial counsel. The only additional funds the defendant is expending is for filing motions relating to the delayed disclosure.

*States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012)). "[A]nalysis of this constitutional claim overlaps significantly with the analysis required under the Speedy Trial Act." *Id.* "[L]ike the Speedy Trial Act, the Sixth Amendment counts delay due to government failure only where that failure was in bad faith." *United States v. Esquilin*, 205 F.3d 1325 (2d Cir. 2000) (citing *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (negligent government delay not counted in Sixth Amendment balancing where it was not the product of bad faith)).

The dismissal of an indictment is an "extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotation marks & citation omitted). The law is well-settled that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956).

There appears to be no law "which indicates whether the Court can reconsider a prior exclusion of time, what standard the Court should or must employ when making that determination, or what the effect of such a reconsideration would be." *United States v. Reichberg*, No. 1:16-CR-468-GHW, 2018 WL 6599465, at *8 (S.D.N.Y. Dec. 14, 2018). As such, in a recent case, Judge Woods construed a motion to dismiss an indictment based on allegedly improper prior exclusions of Speedy Trial Act and Sixth Amendment time as a motion for "reconsideration and vacat[ur of] its prior exclusions of time . . . pursuant to Local Rule 6.3." *Id.* Such motions for reconsideration must be filed within 14 days of the relevant Court decision. *Id.*

### B. Discussion

The defendant's argument is foreclosed by the Second Circuit's decision in *Esquilin*, as Judge Woods recently held in an almost identical circumstance in *Reichberg*. In *Reichberg*, one

11

week before trial and over a year after the Government had informed defense counsel that "discovery was complete," the Government disclosed to defense counsel it had inadvertently failed to produce thousands of intercepted communications and potential *Brady* materials. Defense counsel moved to dismiss the Indictment on Speedy Trial grounds, retrospectively objecting to two of the Court's prior exclusions of time in the interest-of-justice (one of the exclusions with consent of all parties, the other over the defendant's objection). Judge Woods denied the motion.

A straightforward application of this well-reasoned precedent to this case should result in the denial of the defendant's motion. To summarize the relevant facts here:

- The Court excluded time in the interest of justice from the date of the defendant's arrest to October 11, 2019, through five written and oral orders, entered January 30; February 14; April 11; May 28, and August 1, 2019.
    - The *defendant*, not the Government, made the applications excluding time under the Speedy Trial Act for the period from April 17 to May 31 (Dkt. No. 12); and from May 31 to August 1 (Dkt. No. 15), so that his attorney could review the discovery materials which the Government had already produced. At the August 1 conference, once again it was the *defendant* who "request[ed] additional time to finish discovery." (Dkt. No. 19, p. 10).
- The Government requested, with the defendant's consent, the exclusion of speedy trial time from October 11, 2019, to the scheduled trial date of March 30, 2020, in the interests of justice, in order for the Government to produce additional

discovery materials, the defendant to file his motion for a bill of particulars and statute of limitations, and for the parties to prepare for trial. (Dkt. No. 29).

- o The defendant's motions filed October 25, 2019, resolved by the Court on December 18, 2019, meant that the 30 days from October 25, 2019 to November 24, 2019 was, wholly separately, automatically excluded from Speedy Trial calculations under 18 U.S.C. §§ 3161(h)(1)(D) and (h)(1)(H).
- o From January 17, 2020 to February 16, 2020, Speedy Trial Act time was also automatically excluded under 3161(h)(1)(D) and (h)(1)(H), based on the pending motions. *See, e.g.*, *Bert*, 814 F.3d at 78 (speedy trial time begins to run at the end of the "30-day advisement period" after the filing of a pre-trial motion).
- The Government then applied, and the Court ordered, that Speedy Trial Act time be excluded from the previously scheduled trial date of March 30, 2020, to June 1, 2020, in the interest of justice.
  - o From March 13, 2020 to April 12, 2020, Speedy Trial Act time is once again also automatically excluded under 3161(h)(1)(D) and (h)(1)(H), based on the pending motion.

As an initial matter, as was the case in *Reichberg*, the defendant's implicit motion for reconsideration of the Court's prior exclusions of time is untimely. The timeliness rule is "not merely a procedural quirk," but "serves to protect the integrity of proceedings before the Court by ensuring some measure of finality." 2018 WL 6599465, at *9. And the facts in *Reichberg* are true here as well – "the adjournments which led to the Court excluding time . . . were granted

primarily to allow [the defendant] the time [he] proffered to the Court was required to adequately prepare for trial." *Id.*

Even on the underlying merits, there is no basis to dismiss the Indictment. "Government failure to comply with discovery rules can prevent exclusion of time from speedy trial calculations if that failure is chronic or in bad faith." *Esquilin*, at *2. A similar rule applies with respect to the constitutional right to Speedy Trial: whether the reason for the exclusion was the Government's bad faith. *Reichberg*, 2018 WL 6599465, at *14. And as described above, there is no basis to conclude that the reason for the Government's late disclosure was anything other than inadvertent.[7]

### IV. The Government Will Not Introduce Jain's Post-Arrest Statements in its Case-in-Chief

The Government will not seek to introduce Jain's post-arrest statements (described in general terms above) in its case-in-chief, so his motion to suppress is moot.

## CONCLUSION

The Court should deny the defendant's motion to dismiss the Indictment under the Sixth

---

[7] Judge Woods' decision in *Reichberg* also addresses the defendant's assertion here that his Sixth Amendment rights were violated because of his "limited funds." 2018 WL 6599465, at *14 ("The Court is sensitive to Defendants' arguments that the delay in this case prejudices Defendants by straining their financial resources and subjecting them to the social consequences that follow a criminal indictment," but nonetheless rejecting the defendants' attempts to object to the exclusion of Speedy Trial Act time).

14

Amendment and the Speedy Trial; and his motion to suppress his post-arrest statement is moot.

Dated: New York, New York

March 27, 2020

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney
        Southern District of New York
        *Attorney for the United States of America*

By:   */s/*_____
      Tara M. La Morte
      Sam Raymond
      Assistant United States Attorneys
      1 St. Andrew's Plaza
      New York, New York 10007
      Tel.: (212) 637-1041/6519