UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>NIKET JAIN,<br><br>Defendant. | **Declaration**<br>19 Cr. 59 (PKC) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, Samuel L. Raymond, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am an Assistant United States Attorney with the Southern District of New York and one of the attorneys for the Government responsible for this case.

2. I joined the prosecution team for the above-referenced defendant in late November 2019. AUSA Tara La Morte was the primary prosecutor assigned at the time. I began to learn more about the case by talking to AUSA La Morte and reading documents stored on the electronic case file. I learned that as part of the investigation and prosecution into Niket Jain, the Government had entered into a cooperation agreement with an individual, referred to as "Individual-1" in the Indictment.

3. From January 27, 2020 to February 4, 2020, I was on trial before Judge Jed S. Rakoff in *United States v. Fernando Ferrer*, 18 Cr. 284 (JSR).

4. On or about February 5, 2020, AUSA La Morte informed me that certain electronic devices (the "Devices") had been seized from Individual-1 and been imaged by the FBI's Computer Analysis Response Team, and that these images had never been reviewed by FBI agents or prosecutors in our Office or produced to the defendant. This was the first time I

became aware of the existence of the Devices. On February 6, 2020, AUSA La Morte provided me with a copy of an October 9, 2018 email between Individual-1's then-defense counsel David Gourevitch and FBI agent Wayne Boddy, in which Gourevitch informed Agent Boddy that the Devices included information that Individual-1 invoked attorney-client privilege over.

5. After AUSA La Morte notified me of the existence of the Devices, she and I worked with the case agent, Jonathan Polonitza, to try to obtain copies of these images as quickly as possible. On or about February 12, 2020, Agent Polonitza informed us that the images were more than 4 terabytes, and asked us to obtain a computer hard drive large enough so that he could upload the images and then provide the images to the United States Attorney's Office.

6. On or about February 12, 2020, AUSA La Morte and I informed defense counsel Paul Weinstein that the FBI had images of the Devices and that the Devices had not been reviewed.

7. On February 13, 2020, I filed a letter to the Court regarding the Devices.

8. On or about February 19, 2020, AUSA La Morte and I obtained a 6 terabyte drive from the United States Attorney's Office's Information Technology unit ("IT"), so that Agent Polonitza could upload the images of the Devices from the FBI's systems and provide them to us.

9. On or about February 20, 2020, the Court ordered a hearing regarding the Devices, scheduled for February 26, 2020.

10. AUSA La Morte had pre-scheduled international work travel during the week of February 24, 2020, and so I was responsible for handling the conference before the Court and producing the images of the Devices to defense counsel that week.

11. On or about February 25, 2020, Agent Polonitza provided me with the 6 terabyte drive uploaded with the image of the Devices. I tried to plug the drive into my office computer to review the materials, but could not review any materials. I spoke with IT, and arranged to review the 6 terabyte drive on an IT computer using a special computer program called "FTK."

12. Upon my cursory review, I observed that on one of the images of the computers was a folder called "Privileged" – consistent with the information provided by Gourevitch in his October 2018 email. I did not open the folder marked "Privileged" and have not reviewed any documents therein. I spoke with IT about how to produce all of the materials from the two computers within the Devices besides the folder marked "Privileged". My goal was to have a discovery drive with the materials from the computers (without the folder marked "Privileged") prepared quickly enough to provide it to defense counsel the next day at the hearing before the Court.

13. Employees in IT said we would need another 6 terabyte drive in order to produce the materials to defense counsel. I arranged to obtain such a drive. I spoke with IT employees about how to remove the folder marked "Privileged" from the documents uploaded on the new drive for defense counsel. During those discussions, IT advised me of certain difficulties with this request given the way the images were stored. Ultimately, however, IT informed me that they would be able to produce all of the materials from the computers except for the folder marked "Privileged."

14. On or about February 27, 2020, IT began to do that. According to emails sent to me by members of IT, IT had created the new drive with the Privileged folder removed. I am enclosing with this Declaration an email chain between myself and members of IT regarding the creation of the drive. I have highlighted the most relevant portions. My recollection is the

statement by a member of IT on February 26 that "When Mike is finishes with the extracted priv data from the other image we will copy that as well" referred to the extraction of the folder marked privileged from the final copy to be produced to defense counsel. In the email chain, on February 27, 2020, the other member of IT offered for me to review and compare the new drive before it was provided to defense counsel, and that I agreed to do so that day. However, I do not believe I reviewed the drive on February 27. I was out of the office on February 28. Defense counsel picked up the drive from the U.S. Attorney's Office when I was out of the office, on February 28. As a result, I do not believe I reviewed the drive before it was produced, and so did not identify the erroneous inclusion of the folder marked privileged in the produced copy before it was produced to defense counsel.

Dated: New York, New York
April 24, 2020

Samuel L. Raymond
Assistant United States Attorney
(212) 637-6519