UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

                v.

NIKET JAIN,

                Defendant.

19 Cr. 59 (PKC)

**GOVERNMENT'S POST-HEARING MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND OTHER RELIEF**

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-6519

Sam Raymond
Brian Blais
Assistant United States Attorneys
– Of Counsel –

The Government respectfully submits this memorandum of law in opposition to defendant Niket Jain's motion to dismiss the indictment and, in the alternative, for the Court to inspect the grand jury minutes.[1]

## PRELIMINARY STATEMENT

As the Court is aware, the Government failed to produce certain discovery information in its possession until February 2020. After multiple rounds of briefing, factual affidavits, and testimony, Jain has still provided nothing—no case law, no facts—to support his motion to dismiss the Indictment, on due process, choice of counsel, or Speedy Trial grounds. Nor has Jain shown any particularized need for this Court to review the grand jury minutes *in camera*. The Government respectfully requests that this Court deny Jain's motion in full.

## RELEVANT BACKGROUND

As the Court now knows well, after the arrest of Individual-1 in October 2018, FBI Special Agent Wayne Boddy, with the knowledge of AUSAs Andrew Adams and Tara La Morte, seized three electronic devices, two computers and a cellular phone (the "Devices") from Individual-1 with Individual-1's consent. Because of a confluence of mistakes made by the prosecution team, the Government did not begin producing materials from the Devices to Jain until late February 2020.[2] *See* Dkt. No. 109 (Government letter dated April 24, 2020, and supporting declarations).

---

[1] The Government addresses Jain's motion for production of certain materials in a sealed addendum to this opposition.

[2] The Government produced the vast majority of the materials from the Devices, namely all of the information on the computers and all of the information on the cellular phone besides messages, in February 2020. As the Court knows, the Government accidentally produced materials to which Individual-1 had claimed attorney-client privilege. A Filter Team staffed by an AUSA and FBI Agent are working to finalize a memorandum to summarize the contents of the documents which Individual-1 and his counsel had marked segregated as Privileged. The Government also produced all of the messages from the cellular phone with the exception of communications between Individual-1 and Individual-1's various lawyers in June 2020.

The Court heard oral testimony from Agent Boddy and AUSA La Morte on August 12, 2020.

At the hearing, and in his post-hearing brief, Jain asserts that he has identified evidence from the Devices which is exculpatory: namely, that the Devices contain evidence that "Investor-1," as defined in the Indictment, actually was a money laundering operation, which Individual-1 knew about and Jain did not.  Br. at 4.  He has also identified a declaration, purportedly by Semen Kaplan (the "Semen Kaplan Declaration"), in which Semen Kaplan stated that he was the sole beneficial owner of Investor-1, and that Semen Kaplan did "not view [him]self as a victim" of the "Investment Company" and of Individual-1.

## THERE IS NO BASIS TO DISMISS THE INDICTMENT

Jain argues that the Court should dismiss the Indictment, reasserting his claim that the Government interfered with his right to counsel of choice, violated the Speedy Trial Act, and now also asserting that the Government infringed upon Jain's due process rights by its supposed *Brady* violations.  The Court should reject each argument, and reject Jain's motion.

There is no basis for the Court to dismiss the indictment on due process grounds.  First, and most importantly, the Government's failure to disclose the materials on the Devices was inadvertent.  Second, Jain has not suffered the prejudice required to dismiss an indictment on *Brady* grounds, given that trial in this case still has not yet commenced, and was more than a month away when the Government produced the vast majority of materials from the Devices.

Because the Government's failure to produce materials from the Devices was inadvertent, there is also no basis to dismiss the Indictment on choice of counsel or Speedy Trial grounds.

### A.  There is No Basis to Dismiss on Due Process Grounds

Under the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecutor must "disclose material exculpatory evidence to the defendant before trial."  *Dist.*

2

*Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009). *Brady* requires disclosure of evidence that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The evidence is "material" if the evidence is itself admissible, could lead to admissible evidence, or would be an effective tool on cross-examination. *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002). While the Government is required to disclose such evidence, "'as long as a defendant possesses *Brady* evidence in time for its effective use,' there can be no *Brady* violation." *United States v. Halloran*, 821 F.3d 321, 341 (2d Cir. 2016) (citing *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001)).

The Second Circuit has held that "the remedy for a *Brady* violation is *vacatur* of the judgment of conviction and a new trial in which the defendant now has the *Brady* material available to her." *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc). Because dismissal of an indictment based on a *Brady* violation is an "extreme sanction" and a "drastic remedy," it is "appropriate only when it is otherwise 'impossible to restore a criminal defendant to the position that he would have occupied vis-a-vis the prosecutor,' or when there is a 'widespread or continuous' pattern of prosecutorial misconduct." *Halloran*, 821 F.3d at 342 n.14 (citing *United States v. Fields*, 592 F.2d 638, 647–48 (2d Cir. 1978)). "[D]eliberate misconduct" by the Government can lead to dismissal of an indictment because such actions should "targeted for extra deterrence." *Government of Virgin Islands v. Fahie*, 419 F.3d 249, 254-55 (3d Cir. 2005). "'[A]ccidental or merely negligent'" failures to disclose *Brady* material are not "flagrant misconduct" sufficient to merit dismissal of an indictment. *United States v. Bundy*, 968 F.3d 1019, 1038 (9th Cir. 2020) (citing *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008)).

1. The Government's Failure to Disclose the Devices was Inadvertent

As described above, the Government failed to disclose the Devices based on a series of

interconnected mistakes.  Agent Boddy considered the Devices, "whether rightly or wrongly," as associated with a "separate money laundering investigation," Tr. 110, into Individual-1 and others "that kind of started in 2016 and continued during the time of the investigation," as opposed to the investigation of Jain into securities fraud, Tr. 71, which as charged in the Indictment occurred between in or about 2010 up to and including in or about 2014.  As a result, when in November 2018 the focus of the prosecution turned towards potentially charging Jain, Tr. 105, 107, Agent Boddy stopped reviewing the cellular phone (the only one of the Devices he had even begun reviewing) in order to identify relevant inculpatory evidence to charge Jain. Tr. 107–109.  AUSA La Morte, who was in charge of the case at the time discovery was produced, testified that she forgot about the Devices, Tr. 149, and that while she had numerous conversations with Agent Boddy regarding discovery, he never referred to the Devices.  Tr. 151–152.  When Individual-1 referred to one of the Devices in a preparatory session on January 28, 2020, reminding AUSA La Morte of their existence, AUSA La Morte acted immediately, asking Agent Polonitza to determine whether the Government had access to any of Indivdual-1's electronic devices.  When Agent Polonitza asked him, Agent Boddy confirmed just that, and the Government then accessed and provided Jain with the Devices.  This is a quintessential example of an inadvertent failure that the Government acted swiftly to correct upon realizing the error.  The Government's compounding mistakes undeniably created this problem, but once AUSA La Morte identified that the Devices had not been disclosed, she worked assiduously, with the assistance of Agent Polonitza, who worked with Agent Boddy, to identify the error and produce the information to Jain.[3]

---

[3] Jain relies heavily on the Ninth Circuit's recent decision in *Bundy*, which held *inter alia* that an indictment could be dismissed for a "reckless" disregard of *Brady* obligations by the prosecutor. But the Court should not rely on *Bundy* in its analysis.  First, the Second Circuit has never dismissed an indictment for a reckless disregard of *Brady*, and such a standard sits uneasily with the Second Circuit's statement in *Halloran* that dismissal is "appropriate only when it is

4

Jain responds in conclusory fashion that the testimony of both Agent Boddy and AUSA La Morte was not credible. But all of his assertions are rebutted by the actual testimony of these witnesses, which this Court heard: that the failure to produce the Devices was part of a series of conjoined errors by the prosecution team, but in no way a purposeful decision to suppress exculpatory evidence.

First, Jain repeats his unsupported theory that the Government only produced the Devices in February 2020 when AUSA La Morte and Agent Boddy realized that Individual-1 might mention them on the stand, Motion at 17–18, and that the two had previously had made a "decision" "to not produce any evidence on them." Motion at 7, 12. This theory is of course inconsistent with the record. Agent Boddy explained his decision not to review the computers, and to cease reviewing the cellular phone: he associated these Devices with the separate money laundering investigation, Tr. 110, and AUSA La Morte credibly explained that she forgot about the Devices and never had her memory triggered or refreshed during conversations with the FBI about discovery. AUSA La Morte testified that while she did not ask the FBI to go through exhaustively what is in their file and now recognized that she probably should have, Tr. 142, she

---

otherwise 'impossible to restore a criminal defendant to the position that he would have occupied vis-a-vis the prosecutor,' or when there is a 'widespread or continuous' pattern of prosecutorial misconduct." Second, even if the Court were to look to *Bundy*, that case is clearly distinct from this one. The Court there held that the Government in that case had made a "deliberate choice" not to disclose each of the relevant categories of evidence. 968 F.3d at 1038, 1040 (the "government's withholding" was "willful"), 1041 ("Someone in the government made a conscious choice to withhold these documents."). Here, by contrast, the evidence overwhelmingly shows that Agent Boddy and AUSA La Morte's actions were "a matter of simple oversight." *Id.* at 1041. Finally, the defendants there suffered real prejudice: the disclosures of the exculpatory evidence occurred *mid-trial*, and allowing the Government to re-try the case would raise the possibility that the Government could "try out its case, identify any problem areas, and then correct those problems in a retrial." *Id.* (citations omitted). As described herein, whatever prejudice Jain suffered does not rise to the applicable level required, particularly when trial has not yet commenced and the Government could take no advantage by observing its trial strategy.

and Agent Boddy had numerous conversations about discovery, including about specific categories of potentially discoverable materials, and assumed that Agent Boddy would alert her if she had missed a category of discovery. Tr. 142. And the actions of both witnesses in January/February 2020, after determining that the Devices had not been reviewed or produced, wholly belie the existence of any decision to affirmatively withhold the material. AUSA La Morte immediately reviewed the Government's productions to see if the materials had been produced, and when she determined they had not, determined that they should immediately be produced. Tr. 184–185. This is not only AUSA La Morte's own credible testimony, but is further confirmed by the other prosecutors and the agent involved in the case at that time. Raymond Decl. ¶ 5; Adams Decl. ¶ 7; Polonitza Decl. ¶ 8. Similarly, rather than attempt to conceal the Devices' existence, when asked by Agent Polonitza if the FBI had any such devices from Individual-1, Agent Boddy immediately told Agent Polonitza about them. Polonitza Decl. ¶ 8; Boddy Decl. ¶ 17.[4]

Second, contrary to Jain's representation, Agent Boddy has never testified or swore that Individual-1 "told" him "that there was nothing relevant to Niket Jain on the computers," Motion at 7. Instead, Agent Boddy swore that he "understood" from the discussions with Individual-1 that the Devices "would not have particularly relevant materials as to Jain." Boddy Supp. Decl. ¶ 5, Tr. 118 ("Q: And just to be clear, you stopped reviewing the devices because you believed, *in your own mind,* based on Individual 1's proffer statements, that they were unlikely to contain materials

---

[4] Jain also argues that the Government made a misrepresentation to the Court in its February 13, 2020 letter, Dkt. No. 63. In that letter, the Government wrote that it had "learned recently" about the Devices. That statement was ambiguous and could have been more clearly worded, for instance that the Government "recently recalled" the Devices, since Agent Boddy, and AUSAs Adams and La Morte knew about the Devices since October 2018. But to the extent there was any lack of clarity about the circumstances of the Government's realization, as Jain admits those circumstances were clarified at the hearing before the Court less than two weeks later on February 26, in which the Government "disclosed that the USAO actually had known of the devices previously." Motion at 20–21.

relevant to Mr. Jain? . . . A. That is correct.") (emphasis added).  This was a mistake, but there is no reason to conclude that it was anything more than that.

Jain also asserts that Agent Boddy "explicitly recalled that he received documents from the SEC, *including the exculpatory Semen Kaplan Declaration*, in or about April 2018, and that he believed that he provided it to the USAO by email sometime thereafter."  Motion at 10 (emphasis added).  He heavily relies on this point throughout his brief.  But that was not Agent Boddy's testimony: he testified that the "affidavit, declaration of Semen Kaplan" "likely would have been included," but he couldn't "remember specifically."  Tr. 43.  Agent Boddy thereafter stated his "belie[f]" that he had sent the declaration to the U.S. Attorney's Office.  AUSA La Morte clarified this speculation, however, through her unequivocal testimony (Tr. 138–139) ("Q. Have you looked [on the shared drive for the Semen Kaplan Declaration]? A. Yes. Q. And did you see it? A. No."): there is no record in the U.S. Attorney's Office files that this document was included in the SEC's April 2018 production; and every document previously provided by the SEC had been produced to Jain, as the Government stated in its May 13, 2020 Letter, Dkt. No. 114.  AUSA La Morte also testified that she had asked the SEC why this document had not been disclosed to the U.S. Attorney's Office, and that the SEC attorneys had responded that the Semen Kaplan Declaration "was kept in a separate filing system where they normally keep most of their files."  Tr. 139.  Thus, Jain's conclusion that the U.S. Attorney's Office had the Semen Kaplan Declaration since the commencement of this prosecution and failed to produce it remains untrue.

2.  There has Been No *Brady* Violation

Jain began receiving most of the materials from the Devices on February 26, 2020, more than one month from the then-scheduled trial date of March 30.  This included the Semen Kaplan Declaration and other material he now claims is exculpatory.  The over one-month time period

7

was sufficient time for the defendant to "effective[ly] use" this information, *Halloran*, 821 F.3d at 341, and to the extent more time was necessary, the Government expressly noted it "would not oppose any such request for a requested adjournment," Dkt. No. 63.  There is absolutely nothing to justify Jain's assertion that he has been "irreparably deprived of the chance to within a reasonable time use exculpatory information and all the information on the [Individual-1] Devices to investigate this case and defend himself."  Motion at 24.  As a result, there has been no *Brady* violation, since Jain did not suffer relevant prejudice.[5]

Additionally, despite Jain's assertion to the contrary, evidence on the Devices regarding the use of the Investment Company to launder criminal proceeds for Investor-1 is not exculpatory. Jain and Individual-1 have been charged with committing fraud by providing false information about the performance of the Investment Company to its investors, including Investor-1.  Jain asserts that he would be exculpated if the Investment Company "as a money laundering enterprise for the benefit of a Russian organized crime member," Motion at 4.  But that is not true: even if Individual-1 knew that the Investment Company was being used to launder criminal proceeds, Individual-1 and Jain's fraudulent statements to Investor-1 about the value of the Investment Company's portfolio still constitute criminal fraud as to Investor-1.  "It is just as much of a crime to defraud a fraudster as anyone else."  *Pantoja v. United States*, No. 13 CIV. 2781 BMC, 2013 WL 3990912, at *6 (E.D.N.Y. Aug. 2, 2013); *see also United States v. Korogodsky*, 4 F. Supp. 2d 262, 265-66 (S.D.N.Y. 1998) ("It is no defense that the victims of the fraud may have been engaged in some misconduct.").  Instead, any assertion that Investor-1 was committing criminal activity, and using the Investment Company to launder such criminal proceeds, would be "[i]rrelevant

---

[5]  Jain also asserts he has been prejudiced "in his right to a speedy trial, incurred expense, the deprivation of counsel of choice." Motion at 24.  But this is simply a regurgitation of his Speedy Trial and counsel of choice motions.

evidence," inadmissible under Federal Rule of Evidence 402, as well as overly prejudicial in relation to its non-existent relevance, and thus inadmissible under Federal Rule of Evidence 403.

More specifically, this legal theory is illogical. As the Government will establish at trial, Jain and Individual-1 falsified records to show to Investor-1 (and Investor-2) that the Investment Company was earning money through its investment strategy, and to cover up the true performance of those investments, which were ultimately worthless. Even if Investor-1 was using the Investment Company as a money laundering vehicle, Investor-1 would have no intention of continuing to launder money through that vehicle if it knew that the vehicle had lost all of the money.

B.  There is No Basis to Dismiss on Counsel of Choice or Speedy Trial Grounds

As the Government laid out in detail in its March 27, 2020, opposition to Jain's initial motion, Dkt. No. 79, the defendant's motions to dismiss on counsel of choice and Speedy Trial grounds should also be denied. Jain can only succeed on his counsel of choice if he shows the Government "controlled" or "vetoed" or "interfered" with the defendant's choice of counsel. *United States v. Stein*, 541 F.3d 130, 154 (2d Cir. 2008). But because the Government acted inadvertently, it "undisputedly lacked any 'desire' or 'purpose' to 'deliberately interfere' with counsel," and any adverse effect on the defendant "would have been an unintended and incidental consequence of the agent's conduct." *United States v. Fattah*, 858 F.3d 801, 809 (3d Cir. 2017), as amended (June 12, 2017) (citing and distinguishing *Stein*). The same is true as to the Speedy Trial argument: because the Government's conduct was not "chronic or in bad faith," there is no basis to reconsider this Court's previous grants of exclusion of time under the Speedy Trial Act and dismiss the Indictment. *See United States v. Esquilin*, 205 F.3d 1325 (2d Cir. 2000); *United States v. Reichberg*, No. 1:16-CR-468-GHW, 2018 WL 6599465, at *8 (S.D.N.Y. Dec. 14, 2018).

9

**THERE IS NO BASIS TO DISMISS COUNT FOUR OF THE INDICTMENT**

As described above, there is no basis to dismiss any counts in the Indictment against Jain. But that is particularly true as to Count Four, which charges Jain with obstruction of justice for his provision of false sworn testimony in a deposition before the SEC regarding Jain's involvement in the false representations to investors. Nothing in the Devices, nothing in Semen Kaplan's Declaration, nothing in his various motions, and nothing in the testimonial hearing, has disturbed the basic fact that Jain lied in his SEC deposition. There is no conceivable *Brady* issue as to that charge. Even if the Court were to consider dismissing part of the Indictment on due process grounds, there would be no basis to do so for Count Four.

**THERE IS NO BASIS FOR THE COURT TO INSPECT THE GRAND JURY MINUTES**

Jain requests that the Court order production of the grand jury minutes *in camera*, asserting that the Government has provided inconsistent descriptions about the identity of the beneficial owner of Investor-1, as described in the Indictment. But Jain offers no law to support the underlying proposition that the Government is required to submit evidence regarding the beneficial owners of corporate crime victims, or that the Government has constructively amended a fraud indictment if it submits evidence at trial regarding the beneficial owner that was not the same as the evidence presented to the grand jury. Because the identity of the beneficial owner is not material to the grand jury's decision to return a true bill in this case, Jain has not shown a "particularized need" outweighing the "default need for secrecy in grand jury deliberations." *United States v. Hoey*, No. S3 11-CR-337 PKC, 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) (citations omitted). The Indictment charges Jain with participating in frauds against Investor-1 and Investor-2. It was a crime for Jain to defraud Investor-1 regardless of who the beneficial owner of that entity is, and even if the ultimate beneficial owner was itself

10

using Investor-1 for criminal activity. *See Pantoja*, 2013 WL 3990912, at *6. Thus, Jain's concern that absent review of the grand jury minutes the Government could change its theory at trial about the identity of Investor-1 is meritless, because the facts as adduced by the Government at trial will establish Jain's guilty regardless of the identity of Investor-1.

## CONCLUSION

For the foregoing reasons, and those set forth in the Government's prior briefing, Dkt. Nos. 79, 109 the Court should deny Jain's motion to dismiss the Indictment and for the Court to inspect the grand jury minutes.

Dated: New York, New York
September 9, 2020

                Respectfully submitted,

                AUDREY STRAUSS
                Acting United States Attorney
                Southern District of New York
                *Attorney for the United States of America*

By:  */s/*_____
    Samuel Raymond
    Brian Blais
    Assistant United States Attorneys
    1 St. Andrew's Plaza
    New York, New York 10007
    Tel.: (212) 637-6519