

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 18, 2020

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Niket Jain*, 19 Cr. 59 (PKC)

Dear Judge Castel:

    We respectfully submit this letter pursuant to the Court's October 13, 2020 Opinion and Order (the "October Order"), which denied the defendant's claims stemming from the Government's late production of three electronic devices. Following an evidentiary hearing, the Court concluded that the belated production "was not deliberate, but inadvertent," and identified failures by this Office and the Federal Bureau of Investigation ("FBI") that contributed to the unintentional delay. (Dkt. 143 at 2, 15, 25 n.6). The Court directed the leadership of this Office and FBI New York's Criminal Investigative Division to confer regarding steps to prevent a recurrence of these mistakes and report to the Court on corrective action. (*Id.* at 25).

    The October Order specifically cited breakdowns in communication between case agents and AUSAs, insufficient policies to ensure compliance with disclosure obligations, and inadequate unit-chief supervision of disclosure as contributors to the devices' delayed production. (*See* Dkt. 143 at 25 n.6 (citing *United States v. Nejad*, 18 Cr. 224 (AJN), 2020 WL 5549931 (S.D.N.Y. Sept. 16, 2020), at * 6)). As discussed below, we have implemented policy changes to mitigate the risk of poor communication and facilitate appropriate AUSA and supervisory attention to disclosure considerations from the earliest stages of our prosecutions. We have also conducted disclosure training for agents and prosecutors and instituted additional AUSA training on an ongoing basis, emphasizing the need for "prudent and timely" attention to these responsibilities. (*Cf. id.* at 2). Recognizing that addressing this Court's concerns, as well as related issues that surfaced in other prosecutions, requires sustained engagement, we established a standing Disclosure Committee, led by a unit chief and deputy chief of the Criminal Division, and staffed by senior AUSAs, which is helping oversee our policy changes' implementation, assess their effectiveness, and develop further improvements. A Technology Working Group is complementing the Disclosure Committee's efforts by exploring ways to enhance our technological and administrative infrastructure for data management and disclosure.

The Honorable P. Kevin Castel                                                                                          Page 2
December 18, 2020

      Our corrective actions began with a concerted effort to understand the underlying failures.  Informed by the problems that arose in this case, as well as concerns highlighted by the Court in other prosecutions (*see generally Nejad*, 2020 WL 5549931), I and other executive staff members oversaw an analysis of disclosure-related failures.  This assessment formed the framework for meetings between the executive staff and the leadership of each unit in the Office's Criminal Division, aimed at identifying flaws in current procedures, as well as best practices for data management and disclosure.  Unit chiefs continued these conversations within their units, to ensure engagement on these issues at all levels of the Office and that our review benefitted from line AUSAs' perspectives.

      Based on what we learned through this process, we developed and have implemented policy changes aimed at addressing the concerns articulated in the October Order.  Among other things, our revisions require expanded AUSA review of agency case files; more robust written memorialization surrounding AUSA transitions between units and cases; and increased discussion and documentation of disclosure-related considerations—including potential defense theories—in advance of any charges.  These changes augment and reinforce updates to our discovery policy that we made in 2018.

      Mindful of the Court's concern that the prosecution team was insufficiently attentive to disclosure obligations (*e.g.*, Dkt. 143 at 2), we have also deployed additional disclosure-related training for AUSAs and FBI agents.  This past summer, we conducted Office-wide discovery training for all AUSAs and SAUSAs.  More recently, we instituted unit-specific disclosure training by unit chiefs for new unit members, to prepare them for distinct issues presented by each unit's subject matter and agency partners.  In recent months, FBI New York worked closely with us to develop and conduct training for FBI personnel, which emphasized all prosecution team members' disclosure obligations and best practices for complying with them.  These efforts culminated in November 2020 training sessions in which more than 1,375 FBI New York personnel participated.  This joint training was in addition to mandatory discovery training conducted on an annual basis by FBI personnel.

      We recognize that continued attention to these issues is required to ensure that the steps we have taken achieve the desired effects.  With that in mind, we established the standing Disclosure Committee and tasked it with helping to oversee the implementation of the policies described above, evaluating those policies' effectiveness, considering further policy improvements, conducting training for additional law enforcement agencies, and developing supplemental resources and trainings for AUSAs on an ongoing basis.  The Committee will also be identifying opportunities to cultivate and reinforce AUSAs' commitment to resolving any issues that do arise promptly and forthrightly.  (*Cf. id.* at 15 (noting that the Government "brought the non-production of the Devices to light without external prompting")). We believe that sustained engagement by the Disclosure Committee, in partnership with executive staff, will help us find lasting solutions to existing problems and anticipate future issues before they arise.

      In addition, the Technology Working Group, in collaboration with our executive and administrative staff, is evaluating potential technological and administrative improvements to this Office's data management and disclosure practices.  Based on their recommendations, we

will assess whether and how new investments in technology and support staff can strengthen our performance in this area and further address the Court's concerns.  In a similar vein, consistent with national policy, this Office, and our federal law enforcement agency partners, have also in recent months designated eLitigation coordinators to help confront and address the challenges that increasing volumes of electronically stored information pose to federal law enforcement.

                                                                   \*      \*      \*

This Office holds itself to the highest ethical standards.  We believe that our corrective actions have reduced the possibility that future prosecutions will suffer from the issues that arose in this case, and that our commitment to assessing and implementing additional improvements will further mitigate that risk.  As we strive to avoid any issues, we are also mindful that even conscientious and hard-working prosecutors and agents can make mistakes.  When such problems do arise, the Court should expect our AUSAs to disclose them promptly and work diligently to fix them—and the Office to do its part to identify and address the errors' root causes.  Our responsibilities require nothing less.

                                              Respectfully submitted,

                                              Audrey Strauss
                                              Acting United States Attorney

cc   Honorable Alison J. Nathan (by ECF)